IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GERARDO MAESE PADILLA,

    Plaintiff,

v.                                                                                           No. 19-cv-0696 SMV/GBW

GEICO INSURANCE CO.,[1]
KATHLEEN AUSTIN, JOHN G. FRANCHINI,
PAUL GARCIA, J. BUTLER,[2] and
JOHN DOES I–III,

    Defendants,
and

GEICO INDEMNITY COMPANY,

    Third-Party Plaintiff,

v.

LEASING SERVICES, INC. and JOAN RAWSON,

    Third-Party Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY

THIS MATTER is before the Court on Defendants John G. Franchini, Paul Garcia, Jonathan J. Butler, and John Does I–III's Motion for Summary Judgment Based on Qualified Immunity and Memorandum of Law [Doc. 33], filed on September 26, 2019. On October 11, 2019, Defendants Geico Insurance Company and Kathleen Austin filed a notice joining the Motion for Summary Judgment. [Doc. 42]. Plaintiff responded to the Motion on October 17,

---

[1] Though Plaintiff lists Defendant Geico Indemnity Company in the Complaint as "Geico Insurance Co.," [Doc. 1-1] at 1, it appears that Defendant is correctly identified as "Geico Indemnity Company," [Doc. 21] at 1.
[2] Though Plaintiff lists Defendant Butler as "J. Butler" in the Complaint, [Doc. 1-1] at 1–2, it appears that his full name is Jonathan J. Butler, *see* [Doc. 16] at 1.

2019. [Docs. 43, 44].[3] Plaintiff responded to Defendants Geico Insurance Company and Austin's Notice of Joinder on October 22, 2019. [Doc. 46]. Defendants Franchini, Garcia, Butler, and John Does I–III replied on October 25, 2019. [Doc. 47]. The Court held oral argument on the Motion on January 24, 2020. [Doc. 55] (clerk's minutes). The parties consented to have the undersigned conduct dispositive proceedings and enter final judgment in this matter. [Docs. 18, 36, 38]. The Court has considered the briefing, the relevant portions of the record, the relevant law, and the oral argument. Being otherwise fully advised in the premises, the Court finds that the Motion is well-taken and will be GRANTED.

## I. BACKGROUND

In 2016, Alphonzo Mickens signed a contract with a storage facility named South Main Self Storage in Las Cruces, New Mexico. [Doc. 44] at 19. Third-Party Defendant Leasing Services, Inc. ("Leasing Services") manages South Main Self Storage. *Id.* On May 23, 2016, an unknown person stole a motorcycle belonging to a person in Arizona. [Doc. 33-2] at 2. On the same day, a report was entered in the National Crime Information Center ("NCIC") listing the motorcycle as stolen. *Id.* At some point after the theft, the owner of the motorcycle transferred its certificate of title to his or her insurance company, Geico Indemnity Company ("Geico"). *See* [Doc. 33-1] at 1–2. There is no dispute that Geico holds the certificate of title.

The record does not make clear what happened to the motorcycle for the next two-and-a-half years. It resurfaced when Mickens failed to pay his rent charges to South Main Self Storage. *See* [Doc. 44] at 18. Pursuant to the New Mexico Self-Service Storage Lien Act

---

[3] Plaintiff filed two identical Responses on the same date. *See* [Docs. 43, 44]. For simplicity's sake, the Court will cite to only the later-filed Response, [Doc. 44].

(the "Lien Act"), South Main Self Storage placed a lien on the property in Mickens' storage unit—which included the stolen motorcycle. *Id.* South Main Self Storage learned that Geico claimed an interest in the motorcycle, so it sent Geico a letter stating that, unless Geico paid the delinquent rent charges, it "[would] proceed with the disposition of the [motorcycle] to satisfy [its] lien." *Id.* at 25. Geico did not agree to pay the charges, and South Main Self Storage proceeded with a sale of the motorcycle under the Lien Act. *See id.* at 18.

The sale was held on January 23, 2018. [Doc. 33] at 2. Plaintiff successfully bid on the motorcycle and took possession of it. *See* [Doc. 44] at 13. At some time thereafter, a member of the Doña Ana County Sherriff's Office told Plaintiff that he "would like to pick up the [m]otorcycle for Geico." *Id.* Plaintiff's counsel then discussed the motorcycle with counsel for Doña Ana County. *Id.* at 13–14. After this discussion, the Doña Ana County Sherriff's Office decided not to seize the motorcycle, apparently "determin[ing] this issue [to be] a civil matter between Geico and [Plaintiff]." *Id.* at 14.

Defendant Paul Garcia, a special agent with the New Mexico Office of Special Investigations, signed an affidavit for a search warrant authorizing the seizure of the stolen motorcycle on January 17, 2019. [Doc. 33-3] at 6. Garcia averred that the motorcycle was stolen and that Plaintiff had purchased it from a storage facility. *Id.* at 5. He averred that he spoke with Geico employee Kathleen Austin, who told him that Geico personnel had informed South Main Self Storage before its sale that the motorcycle was stolen. *Id.* According to the affidavit, Plaintiff had attempted to register the motorcycle with the New Mexico Motor Vehicle Division ("MVD"), but the MVD refused to register it in Plaintiff's name because the

3

motorcycle was stolen. [Doc. 33-3] at 5. State District Judge Charles W. Brown signed the search warrant on January 17, 2019. *Id.* at 2.

The New Mexico State Police executed the search warrant the next day. *See id.* at 3. Law enforcement officers, including Defendant Jonathan Butler, seized the motorcycle from Plaintiff's residence. *Id.* The officers gave the motorcycle to a towing company, which delivered the motorcycle to a company named Integrity Auto Collision. [Doc. 44] at 14. Integrity Auto Collision, in turn, delivered the motorcycle to Geico. *Id.*

## II. PROCEDURAL HISTORY

Plaintiff sued Geico, Austin, Butler, Garcia, and John Franchini (the New Mexico Superintendent of Insurance and Garcia's alleged boss) on June 8, 2019, in New Mexico state court. [Doc. 1-1] at 1. Plaintiff claims that he became the motorcycle's lawful owner by purchasing it at the sale under the Lien Act. *See id.* at 2–4. He alleges that the Defendants conspired to convert his property by taking the motorcycle and giving it to Geico. *Id.* at 5. He alleges that Franchini, as the Superintendent of Insurance, failed his obligation to train employees about the requirements for applying for a search warrant and the legal effect of sales under the Lien Act. *Id.* at 6. Finally, Plaintiff sues Defendants Butler, Garcia, Franchini, and three John Does (the "State Defendants") under 42 U.S.C. § 1983 for violating his "constitutional right to be free of unlawful seizure and detention of property." *Id.*

The State Defendants removed the case on June 30, 2019. *See* [Doc. 1] at 1–2. Butler moved for summary judgment on August 16, 2019, asserting that he is entitled to absolute quasi-judicial immunity as an officer executing a search warrant. [Doc. 16]. Geico filed its Third-Party Complaint against Leasing Services and its director, Joan Rawson, on September 4,

2019, arguing that Leasing Services and Rawson caused the underlying dispute because they did not obtain a valid lien on the motorcycle, failed to properly sell the motorcycle under the Lien Act and accompanying regulations, and misrepresented to Plaintiff their right to sell the motorcycle. [Doc. 21] at 11–20. On September 24, 2019, Leasing Services and Rawson moved to dismiss the Third-Party Complaint. [Doc. 31]. These Motions remain pending.

On September 26, 2019, the State Defendants moved for summary judgment. [Doc. 33]. They argue that the Court should dismiss Plaintiff's claims against them for four reasons. First, they argue that they are entitled to qualified immunity on Plaintiff's constitutional claims because Plaintiff never lawfully owned the motorcycle, and, even if he did, it was not clearly established that any officer violated his property interest in it at the time of the search. *Id.* at 3–13. Second, they argue that they are immune from liability under the New Mexico Insurance Fraud Act. *Id.* at 13–14. Third, they contend that they are immune from liability for Plaintiff's tort claims under the New Mexico Tort Claims Act. *Id.* at 14–15. Finally, Franchini argues that he is entitled to "[i]mmunity" from suit on Plaintiff's § 1983 claim against him because no affirmative link exists between Franchini's actions and a deprivation of Plaintiff's property rights. *Id.* at 15–16. Plaintiff denies that the State Defendants are entitled to any immunity, and his attorney avers under Federal Rule of Civil Procedure 56(d) that Plaintiff needs additional discovery to properly respond to the Motion. [Doc. 44] at 4–11, 16–17.

Because the Court agrees with the State Defendants' first argument and because Plaintiff does not require additional discovery to respond, the Court will not reach the remaining issues.

5

## III. ANALYSIS

**A. The State Defendants are entitled to qualified immunity because (1) the Fifth Amendment does not apply to the instant case, and (2) Plaintiff fails to demonstrate that his Fourteenth or Fourth Amendment rights were clearly established at the time of the motorcycle's seizure.**

The qualified-immunity doctrine shields government officials performing discretionary functions from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). At the summary-judgment stage, when a defendant asserts qualified immunity, the heavy "burden shifts to the plaintiff, who must clear two hurdles": the plaintiff must demonstrate that "the defendant violated his or her constitutional . . . rights" and that "the right was clearly established at the time of the alleged unlawful activity." *Fisher v. City of Las Cruces*, 584 F.3d 888, 893 (10th Cir. 2009); *see Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). The Court may tackle this two-part inquiry in any order it wishes. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). The plaintiff "must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited." *Medina v. City & Cty. of Denver*, 960 F.2d 1493, 1497 (10th Cir. 1992), *overruled on other grounds by Cty. of Sacramento v. Lewis*, 523 U.S. 833 (1998) (quoting *Hilliard v. City & Cty. of Denver*, 930 F.2d 1516, 1518 (10th Cir. 1991)). "Ordinarily, in order for the law to be clearly established, there

must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Id.* at 1498. Though this burden does not require the plaintiff to identify a case holding the specific action at issue unlawful, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *Id.* at 742. Defining clearly established law at such a level of generality "avoids the crucial question [of] whether the official acted reasonably in the *particular* circumstances that he or she faced." *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) (emphasis added).

Plaintiff's Complaint does not specify which Amendment the State Defendants violated by taking his motorcycle. In his Response, Plaintiff argues that the State Defendants' conduct violated the Fourth, Fifth, and Fourteenth Amendments. [Doc. 44] at 4–5. The Court therefore will analyze the State Defendants' conduct under each of those Amendments.

    **1.**     **Fifth Amendment**

The Court may quickly dispose of Plaintiff's Fifth Amendment claim. Plaintiff argues that the law prohibiting the State Defendants' actions was clearly established because "[t]he Fifth Amendment among other things provides that private property should not be taken for <u>public use</u> without just compensation." [Doc. 44] at 4. Plaintiff is correct; the Fifth Amendment forbids taking private property for *public* use without just compensation. U.S. Const. amend. V. It says nothing about the constitutionality of government seizure of private property for *private* use. Here, Plaintiff alleges that the police caused the motorcycle to be transferred to Geico, a private party. [Doc. 44] at 14. The State Defendants therefore did not violate the Fifth Amendment.

7

*See Burns v. Mukasey*, No. CIV S-09-0497-MCE-CMK, 2009 WL 3756489, at *5 (E.D. Cal. Nov. 6, 2009); *Niemeyer v. Williams*, No. 07-cv-1103, 2008 WL 906051, at *8 (C.D. Ill. Mar. 31, 2008). Even if the Fifth Amendment applied to this case, Plaintiff's bare statement that it prohibits taking private property for public use simply restates the text of the Amendment at a high level of generality and, therefore, would not clearly establish that the State Defendants' conduct violated the Fifth Amendment. *See al-Kidd*, 563 U.S. at 742.

2. **Fourteenth Amendment**

The Fourteenth Amendment provides that no "state [shall] deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Under the Fourteenth Amendment, "to prevail on either a procedural or substantive due[-]process claim, a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectible property interest." *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007) (quoting *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000)). To defeat a motion for summary judgment based on qualified immunity, Plaintiff "must convince this [C]ourt 1) he had a clearly established property interest . . . at the time of the alleged wrongful [deprivation], and 2) a material issue of fact remains as to whether Defendants' conduct deprived him of due process." *Patrick v. Miller*, 953 F.2d 1240, 1244 (10th Cir. 1992). The parties dispute only the first element of this test.[4]

---

[4] Plaintiff does not clarify whether he alleges a substantive or procedural due-process claim. Based on his briefing, he appears to allege only a procedural due-process claim. An executive interferes with a person's substantive due-process rights by depriving the person of life, liberty, or property in a manner so arbitrary that it shocks the conscience. *Abdi v. Wray*, 942 F.3d 1019, 1027 (10th Cir. 2019). Plaintiff does not expressly argue that the State Defendants acted in a manner so arbitrary that it shocks the conscience. Rather, Plaintiff complains that "Geico chose to seize the property *without [a] hearing* and take it out of state immediately. This was only done through the assistance of . . . the State Defendants." [Doc. 44] at 5 (emphasis added). This argument sounds in procedural, not

8

The State Defendants argue that Plaintiff lacked a protected property interest in the motorcycle for a number of reasons. First, they contend that the sale of the motorcycle under the Lien Act did not give Plaintiff a property interest in the motorcycle. [Doc. 33] at 5–8. Second, they argue that Plaintiff lacked any property interest because after the sale, once he became aware that the motorcycle was stolen, his retention of it constituted conversion and the crime of receiving stolen property. *Id.* at 7–9. Plaintiff argues that he became the motorcycle's owner as a result of the sale. [Doc. 44] at 6. He believes that "at the time of the sale the motorcycle lost its status as stolen and became" his property. *Id.* at 7.

The parties devote the bulk of their briefing to disputing whether Plaintiff lawfully owned the motorcycle after purchasing it at the auction. Clearly, if a person owns a vehicle, the person "ha[s] a property interest in the seized vehicle[] that could not be taken without constitutional due process." *Miller v. Yard*, Nos. 09-cv-1124 BB/WPL, 10-cv-171 WPJ/LFG, 2012 WL 13081440, at *8 (D.N.M. Feb. 27, 2012). Yet, a person may lack an ownership interest in a vehicle and nonetheless have a property interest in it, for property interests protected by due process "extend well beyond actual ownership of real estate, chattels, or money." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 571–72 (1972); *see Fuentes v. Shevin*, 407 U.S. 67, 86 (1972) ("[T]he Fourteenth Amendment's protection of 'property,' . . . had never been interpreted to safeguard only rights of undisputed ownership."). To have a property interest, "a person

---

substantive, due process. *See Archuleta v. Colo. Dep't of Institutions, Div. of Youth Servs.*, 936 F.2d 483, 490 (10th Cir. 1991) ("[P]rocedural due process ensures a state will not deprive a party of life, liberty[,] or property unless fair procedures are used in making that decision; substantive due process, on the other hand, guarantees that the state will not deprive a party of those rights for an arbitrary reason regardless of how fair the procedures are that are used in making the decision."). To the extent that Plaintiff intended to bring a substantive due-process claim, he has insufficiently briefed it and, therefore, waived it. *See Xtomic, LLC v. Active Release Techniques, LLC*, 340 F. Supp. 3d 1092, 1105 (D. Colo. 2018).

9

clearly must have more than an abstract need or desire for [the property]. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577. "Property interests, of course, are not created by the Constitution. Rather they are . . . defined by existing rules or understandings that stem from an independent source such as state law . . . ." *Id.*

The Court will therefore analyze Plaintiff's alleged property interest in two steps. First, it will determine whether it was clearly established that Plaintiff had a property interest because he owned the motorcycle. If the Court answers the first question in the negative, then it will determine whether it was clearly established that he had a lesser property interest that the Fourteenth Amendment nonetheless protects.

Plaintiff has not demonstrated that he had a clearly established property interest in the motorcycle based on his alleged ownership of it. Under the Lien Act, a storage-facility owner may obtain a lien on "all personal property located at the self-service storage facility for rent, labor[,] or other charges in relation to the personal property and for expenses necessary for its preservation or expenses reasonably incurred in its sale." N.M. Stat. Ann. § 48-11-5 (1987). This lien attaches to property in a storage unit once the unit's occupant fails to pay rental charges. *See id.* If the occupant is in default of his charges for 90 days, the facility owner may enforce its lien by selling the property in the unit. *See id.* § 48-11-7(A)(3), (E)–(J). "A good[-]faith purchaser takes the property free of any rights of an unsecured lienholder and free of any rights of a secured lienholder who has received notice by [the facility] owner." *Id.* § 48-11-7(I).

Plaintiff argues that he is a good-faith purchaser of the motorcycle, and the Lien Act therefore extinguished the interests of Geico and gave him an ownership interest in the motorcycle.[5] [Doc. 44] at 2–3. He believes that the "clear and unambiguous" text of the Lien Act compels this conclusion. *Id.* at 3. He argues that the Lien Act's good-faith-purchaser section created his Fourteenth Amendment property interest.

Plaintiff fails to demonstrate that it was clearly established that he became the owner of the motorcycle merely because he was a good-faith purchaser. The text of the Lien Act suggests the opposite conclusion. The Lien Act states that a good-faith purchaser takes the property free of any rights of certain *lienholders*; it does not mention the owner of the property.[6] *See* § 48-11-7(I). Moreover, the Lien Act only gives the storage facility owner a *lien* on the property. *See id.* § 48-11-5. It does not give the facility the ability to transfer ownership of the property. As Geico was not a lienholder but rather the owner, it is not clearly established that § 48-11-7(I) extinguished Geico's ownership interest in the motorcycle.

Furthermore, the process for obtaining a certificate of title for vehicles in New Mexico requires additional steps apart from simply buying a vehicle. Section 66-3-103 provides that any person who comes into possession of a vehicle "shall present to the [motor vehicle] division the certificate of registration and the properly assigned certificate of title and shall apply for and

---

[5] For the purposes of this Motion, the State Defendants "do not challenge whether Plaintiff is a 'good[-]faith purchaser.'" [Doc. 33] at 7 n.3.

[6] Unlike some other states, New Mexico's Lien Act does not give a good-faith purchaser a property interest free of the rights of any other person. *See, e.g.*, Fla. Stat. § 83.806(7) (2017) ("A purchaser in good faith of the personal property sold to satisfy a lien . . . takes the property free of *any claim* . . . despite noncompliance by the [facility] owner with the requirements of this section." (emphasis added)); Nev. Rev. Stat. Ann. § 108.4783 (2011) ("Any person who purchases the personal property in good faith at a sale to satisfy the lien . . . takes the property free and clear of the rights of *any party*, even though the [facility] owner who conducted the sale may have failed to comply with the provisions of NRS 108.473 to 108.4783, inclusive." (emphasis added)).

obtain a new certificate of title and new registration for the vehicle." § 66-3-103(A). It appears that Plaintiff attempted to follow this procedure when he tried to register the motorcycle through the MVD. *See* [Doc. 33-3] at 5. Yet, Plaintiff never claims he actually received a certificate of title. That § 66-3-103(A) requires a person wishing to operate a vehicle to follow this procedure for obtaining a certificate of title suggests that merely buying a motorcycle in a sale does not automatically cause the buyer to own it, even if he is a good-faith purchaser.

Ultimately, Plaintiff simply gives the following analysis when arguing that the law clearly established that a Fourteenth Amendment violation occurred:

> More than a century ago, the United States Supreme Court [in] *Missouri Pacific Railway Company v. State of Nebraska Board of Transportation*[,] 164 U.S. 403, 417 (1896) held that '[t]he taking by the state of private property of one person or corporation, without the owner's consent, for the private use of another, is not due process of law and is in violation of the Fourteenth article of the amendment of the Constitution of the United States[."] In a more modern case, the court in *Kelo* [*v.*] *New London*, 545 U.S. 467, 477, 125 S. Ct. 2665, 162 L. Ed. 2d 439 (2005) stated "it has long been accepted that the sovereign may not take the property of A for the sole purpose of transferring it to another private party, B, even though it is paid just compensation[."] In this case that is exactly what was done.
> . . . .
> . . . The seizure [in this case] was only for a private purpose. The law is clear that private parties may not constitutionally participate in criminal search warrants. See, <u>Wilson v. Layne</u>, 526 U.S. 603, 119 S. Ct. 1692, 143 L. ed2d 818 (1999)[] (Holding allowing media to participate in search was unconstitutional and would prevent a claim of qualified immunity in future cases.)[.]
> . . . .
> . . . The above cases clearly set out that one may not seize property of one party to give to another private party. There is no qualified immunity for the actions here.

[Doc. 44] at 4–6 (second alteration in original). This analysis simply recites the general rule that the state may not take property from a private party for a private purpose. Though accurate, Plaintiff defines the law at such a high level of generality that he fails to meet his burden to show that the law was clearly established that the State Defendants violated his Fourteenth

12

Amendment rights. Plaintiff cites no Supreme Court or Tenth Circuit (or even New Mexico) case suggesting that he had a protected property interest in the motorcycle. Repeating the basic law of the Fourteenth Amendment comes nowhere near to meeting his burden to identify clearly established law. *See al-Kidd*, 563 U.S. at 741; *Medina*, 960 F.2d at 1497.

Finally, the cases cited by Plaintiff do not even speak to the issue in this Motion. The State Defendants do not contest that the Fourteenth Amendment prohibits state officials from taking private property in order to give it to another private party. Rather, they contest the first prong of Plaintiff's due-process claim: that he had a property interest in the motorcycle. *See Teigen*, 511 F.3d at 1078. Plaintiff's cases do not focus on this element of a due-process action. Plaintiff fails to demonstrate that it was clearly established that he had a property interest in the motorcycle via his alleged ownership of it.

Nor does Plaintiff demonstrate that it was clearly established that he had a lesser property interest in the motorcycle. In fact, Plaintiff fails to discuss whether he held a possessory interest in the stolen[7] motorcycle under New Mexico law *at all*. *See Patrick*, 953 F.2d at 1244 (holding that state law controls whether a plaintiff has alleged a sufficient property interest to have standing to sue under § 1983 for a violation of the property rights protected by the Fourteenth Amendment). In distinguishable circumstances, the Tenth Circuit has held that a pawnbroker possessing stolen goods under Oklahoma law held a possessory interest in the goods under the Fourteenth Amendment. *Wolfenbarger v. Williams* (*Wolfenbarger II*), 826 F.2d 930, 933–34 (10th Cir. 1987), *abrogated on other grounds by Horton v. California*, 496 U.S. 128 (1990).

---

[7] Though Plaintiff asserts that "at the time of the sale the motorcycle lost its status as stolen," [Doc. 44] at 6, he presents no authority supporting this assertion.

Yet, *Wolfenbarger II* does not clearly establish that *any* possessor of stolen goods retains a possessory interest in it; Plaintiff is not a pawnbroker, and Oklahoma law does not govern in this case. *See Stanley v. Gallegos*, No. 11-cv-1108 GBW/JHR, 2018 WL 1230485, at *20–21 (D.N.M. Mar. 8, 2018). Simply put, Plaintiff cites to no factually analogous case clearly establishing his property interest in the motorcycle. As discussed above, he merely defines the applicable Fourteenth Amendment law at a high level of generality. Such an analysis does not meet his burden to show that the State Defendants violated his clearly established rights. *See al-Kidd*, 563 U.S. at 741; *Medina*, 960 F.2d at 1497. As Plaintiff has the burden to demonstrate that the State Defendants violated his clearly established rights, the Court will not act as his advocate and develop arguments on his behalf.

Plaintiff fails to demonstrate that every reasonable official would have understood that he had a legitimate claim of entitlement to the motorcycle. The Court therefore grants State Defendants' Motion with respect to Plaintiff's Fourteenth Amendment claim.

### 3. Fourth Amendment

As with the Fourteenth Amendment, Plaintiff fails to apply any Fourth Amendment jurisprudence to the facts of this case. The Court therefore holds that the State Defendants are entitled to qualified immunity on Plaintiff's Fourth Amendment claim. "A 'seizure' of property [under the Fourth Amendment] . . . occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" *Soldal v. Cook Cty.*, 506 U.S. 56, 61 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).

Plaintiff fails to meet his burden to demonstrate that it was clearly established that he had a possessory interest in the motorcycle. For the same reasons given above, he has not

demonstrated that it was clearly established that he had title to the motorcycle or that he had a lawful possessory interest in it. He states the following: The "Fourth Amendment prohibits unreasonable searches and seizures among other things. . . . The Fourth and Fifth Amendment[s] both prohibit[] what was done by the state defendants." [Doc. 44] at 4. He cites no relevant[8] authority supporting his Fourth Amendment claim. Like his Fourteenth Amendment analysis, Plaintiff simply restates the Fourth Amendment's prohibition on unreasonable searches and seizures at a high level of generality. The Supreme Court and Tenth Circuit have repeatedly held that defining clearly established Fourth Amendment law requires more specificity. *See Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ("Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts.'" (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001)); *al-Kidd*, 563 U.S. at 742 ("The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established."); *Cummings v. Dean*, 913 F.3d 1227, 1240 (10th Cir. 2019); *Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016). The Court will grant State Defendants' Motion as to Plaintiff's Fourth Amendment claim.

---

[8] Plaintiff argues that "[t]he law is clear that private parties may not constitutionally participate in criminal search warrants." [Doc. 44] at 5 (citing *Wilson v. Layne*, 526 U.S. 603 (1999)). *Wilson* is readily distinguishable from the instant case. There, the police allowed the media to enter the plaintiff's home when executing an arrest warrant. *Wilson*, 526 U.S. at 607, 611. No evidence suggests that Geico representatives accompanied police to seize the motorcycle here. Moreover, *Wilson* does not apply to the issue in this Motion because it did not discuss the circumstances under which a person has a possessory interest in property.

The Court therefore concludes that the State Defendants[9] are entitled to qualified immunity on Plaintiff's Fourth and Fourteenth Amendment claims. In doing so, the Court does not find that a person who retains a stolen good may *never* have a clearly established Fourth or Fourteenth Amendment interest in it. The Court simply finds that given the paucity of briefing that Plaintiff devoted to the clearly established prong of qualified immunity, Plaintiff has failed to meet his burden to show that the law was clearly established in his favor. Though future cases may provide the legal and factual basis for denying qualified immunity in similar circumstances, Plaintiff fails to convince the Court to do so here.

**B.    The Court rejects Plaintiff's request for additional discovery under Rule 56(d) because (1) he fails to identify the probable facts unavailable to him, and (2) he fails to explain how the additional discovery would rebut Defendants' Motion.**

Plaintiff's counsel submits an affidavit under Rule 56(d) stating that he needs additional discovery in order to properly respond to the Motion. He avers that he needs discovery on the following issues: contacts by Geico to law enforcement about the seizure of the motorcycle; the identity of the person who hired, paid, and directed the towing company; "[w]ho Integrity Auto Collision worked for and if there are any written contracts"; the identity of the entity to whom Integrity Auto collision gave the motorcycle; the manner in which Geico obtained the motorcycle; all seizures of property by search warrant by the superintendent of insurance within the prior three years; and all training given by the superintendent within the prior three years related to lien sales and the seizure of property for private parties. [Doc. 44] at 16–17.

---

[9] Defendants Geico and Austin joined the State Defendants' Motion for Summary Judgment, stating that if the Court awards summary judgment to the State Defendants because it found that Geico "was the owner of the subject motorcycle," [Doc. 42] at 1, Geico and Austin also would be entitled to summary judgment. Because the Court decides the Motion for Summary Judgment on clearly established grounds—declining to find that Geico was the owner of the motorcycle as a matter of law—Geico and Austin are not entitled to summary judgment.

Under Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may," in its discretion, defer considering the motion, deny the motion, allow time to take discovery, or issue any other appropriate order. Fed. R. Civ. P. 56(d). "The general principal of Rule 56(d) is that 'summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.'" *Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000) (alteration in original) (quoting *Anderson*, 477 U.S. at 250 n.5). To properly invoke the Court's discretion, the movant must submit an affidavit "(1) identifying the probable facts that are unavailable, (2) stating why these facts cannot be presented without additional time, (3) identifying past steps to obtain evidence of these facts, and (4) stating how additional time would allow for rebuttal of the adversary's argument for summary judgment." *Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1110 (10th Cir. 2017). Though a Rule 56(d) declaration "should be liberally treated," *id.* (quoting *Comm. for First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992)), it "is not a license for a fishing expedition," *Lewis v. City of Ft. Collins*, 903 F.2d 752, 759 (10th Cir. 1990).

The Court rejects Plaintiff's request for additional discovery for two reasons. First, though Plaintiff identifies the general areas in which he wishes to pursue discovery, he fails to identify the probable facts he expects to find if the Court permits discovery. For example, though Plaintiff wishes to perform discovery to find the identity of the person who hired the towing company, Plaintiff fails to identify the probable identity of that person, or how that information might affect the Court's decision. *See* [Doc. 44] at 16. This defect plagues each of Plaintiff's request for discovery. *See id.* at 16–17.

17

Second, and more importantly, Plaintiff fails to explain how additional time for discovery would help him respond to the Motion. The State Defendants moved for summary judgment on a legal issue: the lack of a Fourth or Fourteenth Amendment interest in the property. Plaintiff's requested areas of discovery have no bearing on that issue; they relate entirely to the logistical procedure through which Geico obtained the motorcycle. Plaintiff fails to convince the Court that the requested discovery would be at all relevant to this Motion. The Court therefore rejects Plaintiff's request for additional discovery under Rule 56(d).

C. **Because the State Defendants are entitled to qualified immunity, the Court will dismiss with prejudice Plaintiff's federal claims against them and remand his remaining state-law claims.**

The State Defendants request that the Court dismiss Plaintiff's § 1983 claim against them because they are entitled to qualified immunity. [Doc. 33] at 16–17. The Court agrees. Defendant Franchini requests that the Court dismiss Plaintiff's failure-to-train claim against him. *Id.* at 15–16. To the extent Plaintiff brings this claim under federal law, the Court will dismiss it because Franchini is entitled to qualified immunity. As a result, no federal claims remain.

The State Defendants removed the case to this Court on the basis of federal-question jurisdiction, arguing that the Court has original jurisdiction over Plaintiff's § 1983 claim. [Doc. 1] at 2. The Court has supplemental jurisdiction over Plaintiff's state-law claims. *See* 28 U.S.C. § 1367(a) (2018). Section 1367(c) permits a district court to decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (quoting *Smith v. City of Enid ex rel. Enid*

*City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998)). The Court agrees and will remand Plaintiff's state-law claims to state court. *See Favela v. City of Las Cruces*, No. 17-cv-0568 JB/SMV, [Doc. 121] at 39–40 (D.N.M. Jan. 6, 2020).

## IV. CONCLUSION

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that the State Defendants' Motion for Summary Judgment Based on Qualified Immunity [Doc. 33] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims in Count III (to the extent it asserts a federal claim) and Count IV of the Complaint are **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that the remainder of Plaintiff's claims are **REMANDED** to the Third Judicial District Court, State of New Mexico.

**IT IS FURTHER ORDERED** that Defendant Butler's Motion for Summary Judgment and Memorandum in Support of the Motion Based on Absolute Quasi-Judicial Immunity [Doc. 16] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Third-Party Defendants' Motion to Dismiss Geico's Third-Party Complaint to Contribution and Indemnification [Doc. 31] is **DENIED** as moot.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**